1

2

3

4

UNITED STATES DISTRICT COURT

5

EASTERN DISTRICT OF CALIFORNIA

6

7  | ALAN BARCELONA,

No. 2:14-cv-02389-TLN-KJN

8  |         Plaintiff,

9  |    v.

**ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

10 | STATE OF CALIFORNIA
DEPARTMENT OF JUSTICE; LARRY

**AND DENYING PLAINTIFF'S CROSS-
MOTION FOR SUMMARY JUDGMENT.**

11 | WALLACE, Director, Department of
Justice Division of Law Enforcement, in

12 | his representative capacity; NATHAN
DAVALLE, DOJ Special Agent in Charge,

13 | in his representative capacity; BRENT E
ORICK, DOJ Special Agent in Charge, in

14 | his representative capacity; and
CAHTERINE GAUTHIER, DOJ Special

15 | Agent Supervisor, in her representative
capacity,

16

17 |         Defendants.

18

19      This matter is before the Court on cross-motions for summary judgment filed by

20 Plaintiff Alan Barcelona and Defendants State of California Department of Justice; Larry

21 Wallace, sued in his representative capacity; Nathan DaValle, sued in his representative capacity;

22 Brent E. Orick, sued in his representative capacity; and Catherine Gauthier, sued in her

23 representative capacity (hereinafter referred to collectively as "Defendants") on the claims alleged

24 in Plaintiff's First Amended Complaint ("FAC"). In Plaintiff's FAC, Plaintiff alleges Defendants

25 violated his freedom of speech and association rights under both the United States Constitution,

26 U.S. Const. amend. 1, and the California Constitution, Cal. Const. art. I, §§ 2, 2(a), 3 and violated

27 the protections afforded to him under the Public Safety Officers Procedural Bill of Rights Act

28 (POBR), Cal. Gov't Code § 3300 *et seq.* (West 2015). (Pl.'s FAC, ECF No. 4.) Plaintiff's claims

1

1   arise out of the California Department of Justice's ("DOJ"'s) handling of an internal affairs

2   investigation initiated on the basis of a citizen's complaint.  (Id.)

3   **I.      LEGAL STANDARD**

4          A party seeking summary judgment under Rule 56 bears the initial burden of

5   demonstrating the absence of a genuine issue of material fact for trial.  Celotex Corp. v. Catrett,

6   477 U.S. 317, 323 (1986).  "A fact is 'material' when, under the governing substantive law, it

7   could affect the outcome of the case."  Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n,

8   322 F.3d 1039, 1046 (9th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

9   (1986)).  An issue of material fact is "genuine" when "'the evidence is such that a reasonable jury

10  could return a verdict for the nonmoving party.'"  Id. (quoting Anderson, 477 U.S. at 248).

11         If the movant satisfies its "initial burden," "the nonmoving party must set forth, by

12  affidavit or as otherwise provided in Rule 56, '*specific facts* showing that there is a genuine issue

13  for trial.'"  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

14  1987) (quoting former Fed. R. Civ. P. 56(e)).  "A party asserting that a fact cannot be or is

15  genuinely disputed must support the assertion by citing to particular parts of material in the record

16  . . . or showing that the materials cited do not establish the absence or presence of a genuine

17  dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R.

18  Civ. P. 56(c)(1).  Summary judgment "evidence must be viewed in the light most favorable to the

19  nonmoving party, and all reasonable inferences must be drawn in favor of that party."  Sec. &

20  Exch. Comm'n v. Todd, 642 F.3d 1207, 1215 (9th Cir. 2011) (citing Johnson v. Paradise Valley

21  Unified Sch. Dist., 251 F.3d 1222, 1227 (9th Cir. 2001)).

22         Further, Local Rule 260(b) prescribes:

23         Any party opposing a motion for summary judgment or summary
           adjudication [must] reproduce the itemized facts in the [moving
24         party's] Statement of Undisputed Facts and admit those facts that
           are undisputed and deny those that are disputed, including with
25         each denial a citation to the particular portions of any pleading,
           affidavit, deposition, interrogatory answer, admission, or other
26         document relied upon in support of that denial.

27         If the nonmovant does not "specifically . . . [controvert duly supported] facts

28  identified in the [movant's] statement of undisputed facts," the nonmovant "is deemed to have

admitted the validity of the facts contained in the [movant's] statement." Beard v. Banks, 548

U.S. 521, 527 (2006).

> Because a district court has no independent duty "to scour the record in search of a genuine issue of triable fact," and may "rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment," . . . the district court . . . [is] under no obligation to undertake a cumbersome review of the record on the [nonmoving party's] behalf.

Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010) (quoting Keenan v. Allan,

91 F.3d 1275, 1279 (9th Cir. 1996)); see also Fed. R. Civ. P. 56(c)(3) ("The court need consider

only the cited materials, but it may consider other materials in the record.").

## II.     UNCONTROVERTED FACTS[1]

"[Plaintiff] has been a DOJ employee since 1999 . . . ." (Defs.' Resp. to Pl.'s

Separate Statement of Undisputed Material Facts ("Defs.' Resp. UMF") ¶ 1, ECF No. 15-1.) "On

June 10, 2013, the DOJ received a citizen's complaint involving alleged conduct by [Plaintiff]."

(Id. ¶ 8.) "Because of th[e] citizen['s] complaint alleged threatening behavior against a [DOJ

employee] . . . [the DOJ] open[ed] an internal affairs investigation . . . ." (Defs.' Ex. in Supp. of

Mot. for Summ. J. Ex. 1: ¶ 3, ECF No. 8-3.) "[T]he DOJ noticed [Plaintiff] that he was the

subject of [the aforementioned investigation] arising out of the citizen's complaint." (Defs.'

Resp. UMF ¶ 9.) "In the Notice, Defendant Nathan DaValle ordered [Plaintiff] not to discuss the

existence of the investigation with any member of the DOJ other than his chosen representative."

(Id. ¶ 10.) "DaValle further ordered [Plaintiff] not to discuss anything related to the investigation

with any of the complainants or witnesses in the matter." (Id. ¶ 11.) "[Plaintiff] chose [Kasey]

Clark[2] as his representative in the administrative investigation." (Id. ¶ 13.)

"The first person . . . interviewed in [the] investigation was the complainant[,] . . .

[the investigators] then interviewed a witness identified by the complainant who, in turn,

identified Clark as a witness to the events that formed the basis of the complaint." (Id. ¶¶ 18, 19.)

---

[1] The following facts concerning the motions are either admitted or "deemed" uncontroverted since they have not been controverted with specific facts as required by Local Rule 260(b).

[2] "Clark is the Chief Counsel and General Manager of [the California Statewide Law Enforcement Association ('CSLEA')]" of which Plaintiff "is a member and also serves as the President." (Id. ¶¶ 2, 3.)

1    The DOJ then interviewed Clark.  (Id. ¶¶ 20, 21.)  "At the end of [Clark's] interview . . . [the

2    interviewers] advised Clark that, due to the fact that he had been identified as a witness in the

3    investigation, Defendants would not allow Clark to represent [Plaintiff] during his administrative

4    interrogation."  (Id. ¶ 23.)  "Plaintiff was free to use any other representative [other than named

5    witnesses] - and did so."  (Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts ("Pl.'s

6    Resp. UMF") ¶ 7, ECF No. 13-1.)

7            "The DOJ noticed [Plaintiff] . . . for his administrative interrogation . . . ."  (Defs.

8    Resp. UMF ¶ 25.)  "In the Notice, [the DOJ] reiterated that [Plaintiff's] representative may not be

9    'involved' in the investigation and that [Plaintiff] may not discuss anything related to the

10   investigation with any member of the DOJ other than his 'chosen representative' or with any of

11   the complainants or witnesses."  (Id. ¶ 26.)  "[Plaintiff] participated in the administrative

12   interrogation . . . represented by Gary Messing."  (Id. ¶ 29.)  "At the beginning of [Plaintiff's]

13   administrative interrogation, Messing reiterated [Plaintiff's] desire to be represented by Clark . . .

14   ."  (Id. ¶ 33.)  Further, at the beginning of the interview the DOJ "ordered [Plaintiff] not to

15   discuss the investigation with anyone other than . . . Messing."  (Id. ¶ 35.)[3]

16           **III.    CONSIDERATION OF DOCUMENTS OUTSIDE OF THE PLEADINGS**

17           Plaintiff requests that the Court take judicial notice of Exhibits 1-3.  (Pl.'s Req. for

18   Judicial Notice ("RJN"), ECF No. 13-4.)  Exhibits 1 and 2 are decisions issued by the Public

19   Employment Relations Board ("PERB") and Exhibit 3 is a decision issued by the National Labor

20   Relations Board ("NLRB").  (RJN 2:5-8; 2:24-26; 3:16-19.)  Plaintiff has failed to explain how

21   either the PERB or NLRB decision has any precedential value to the resolution of the parties'

22   cross-motions, accordingly, all three exhibits are irrelevant to this Court's decision.  Therefore,

23   the Court declines to take judicial notice of the contents at Plaintiff's request.  See Santa Monica

24   Food Not Bombs v. City of Santa Monica, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006) ("We decline

25   to take judicial notice of the [requested materials], as they are not relevant to the resolution of this

26   appeal."); see also Cuellar v. Joyce, 596 F.3d 505, 512 (9th Cir. 2010) (Denying party's request

27   _____
     [3] Plaintiff makes a number of evidentiary objections.  (Pl.'s Objection to Defs.' Evidence, ECF No. 13-3.)  However,
     Plaintiff largely admits the substance of the objected to statements within his Complaint. All other objections concern
28   evidence not relevant to this Court's decision below.

1  for judicial notice "as the materials contained therein are not relevant to the disposition of this

2  appeal.")

3      **IV.    DISCUSSION**

4          A.  Plaintiff's Cause of Action under 42 U.S.C. § 1983.

5          Plaintiff alleges that Defendants unlawfully interfered with Plaintiff's exercise of

6  his First Amendment freedoms of speech and association; accordingly Plaintiff seeks injunctive

7  relief under 42 U.S.C. § 1983.  (FAC 13:17-23.)

8          *1.  Freedom of Speech*

9          Defendants argue: "Plaintiff has not alleged facts that would indicate that he was

10  denied any freedom of speech, and has no evidence that he was denied the freedom of speech."

11  (Defs.' Mot. for Summ. J. ("Mot.") 5:2-3, ECF No. 8.)  Further, the instruction given to Plaintiff

12  "not to talk about the investigation to anyone other than his assigned representative . . . is a

13  reasonable time, place[,] and manner restriction designed to uphold the integrity of an

14  investigation into threatening conduct by a peace officer."  (Id. 5:5-8 (citing Comite de Jornaleros

15  de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 940 (2011)).)

16          Plaintiff counters: "[b]ecause [the DOJ's order not to discuss the investigation]

17  prevented [Plaintiff] from discussing the investigation with Clark as well as other sources that

18  would be considered legally confidential . . . without any established necessity, the order

19  constitutes an impermissible restriction on [Plaintiff's] First Amendment right to free speech."

20  (Pl.'s Opp'n to Defs.' Mot. for Summ. J. and Pl's. Cross-Mot. for Summ. J. ("Opp'n") 17:3-7;

21  ECF No. 13.)  Plaintiff replies that "Defendants fail to offer any evidence as to why the order . . .

22  was necessary to preserve the integrity of the investigation, specifically whether and how the

23  transfer of information would prejudice Defendants in their investigation." (Id. 17:25-28.)

24  Further, Plaintiff asserts "the 'integrity of the investigation' argument does not explain or excuse

25  the prohibition against [Plaintiff] talking about the investigation to another confidential source

26  . . . ."  (Id. 18:6-8.)  "[O]ther [available] witnesses would protect 'the integrity of the

27  investigation' from any potential collusion by [Plaintiff] and Clark without the need to restrict

28  [Plaintiff's] speech . . . ."  (Id. 18:10-12.)  "Furthermore, the order . . . was not narrowly tailored

1    because [it] also prohibited [Plaintiff] from speaking to confidential sources . . . ." (Id. 21:13-17.)

2            Defendants reply that "Plaintiff was never advised that he could not discuss the

3    investigation with his spouse, religious advisor, therapist or other protected source." (Defs.'

4    Reply to Pl.'s Opp'n to Defs.' Mot. for Summ. J. ("Reply") 3:23-25, ECF No. 17.) Further,

5    Plaintiff "does not and indeed cannot attack [the] reasons to maintain confidentiality" which

6    include "violating the right to privacy, avoiding retaliation charges, avoiding alerting the subject

7    of wrongdoing of the investigation, and to encourage reports of wrongdoing . . . ." (Id. 5:2-5.)

8            "For content-neutral regulations, the State may limit 'the time, place, and manner

9    of expression' if the regulations are 'narrowly tailored to serve a significant government interest,

10   and leave open ample alternative channels of communication.'" Comite de Jornaleros de

11   Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 940 (9th Cir. 2011)(quoting Perry

12   Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45 (1983)). Content-neutral

13   restrictions must be "justified without reference to the content of the regulated speech".

14   Mothershed v. Justices of Supreme Court, 410 F.3d 602, 611 (9th Cir. 2005), opinion amended on

15   denial of reh'g, No. 03-16878, 2005 WL 1692466 (9th Cir. July 21, 2005). "A time, place, and

16   manner regulation is narrowly tailored as long as the substantial governmental interest it serves

17   'would be achieved less effectively absent the regulation and the regulation achieves its ends

18   without . . . significantly restricting a substantial quantity of speech that does not create the same

19   evils.'" Id. at 612 (quoting Galvin v. Hay, 374 F.3d 739, 753 (9th Cir. 2004) (internal quotation

20   marks omitted)).

21           Defendants' asserted governmental interest in limiting Plaintiff's right to speak of

22   the investigation is to "strengthen the integrity of the investigation into alleged police misconduct

23   by [P]laintiff." (Reply 4:16-18.) This interest is significant given the clear importance of "public

24   confidence that allegations of police misconduct [are] thoroughly investigated." (Id. 5:10-11);

25   see Pasadena Police Officers Ass'n v. City of Pasadena, 51 Cal. 3d 564, 568 (1990) ("Nothing

26   can more swiftly destroy the community's confidence it is police force than its perception that

27   concerns raised about an officer's honesty or integrity will go unheeded or will lead only to a

28   superficial investigation.")

1    Moreover, Defendants demonstrate that the restrictions placed on Plaintiff's right

2  to freely speak of the investigation best further this purpose.  As Defendants explain, a request for

3  confidentiality in employee investigations helps avoid "claims of invasion of privacy, retaliation,

4  wrongful discharge, or negligence, to avoid alerting the employee suspected of wrongdoing; to

5  comply with federal or state guidelines; to preserve a privilege; or to encourage reports of

6  wrongdoing." (Mot. 6:11-13 (quoting William E. Hartsfield, Investigating Employee Conduct

7  § 4:31).)  Therefore, Defendants demonstrate there is no less restrictive means to achieving the

8  compelling state interest in preserving the integrity of an officer investigation.

9    Further, Defendants demonstrate that their confidentiality instruction was narrowly

10  tailored, leaving open ample alternative channels. Plaintiff's assertion that he was prohibited from

11  discussing the investigation with privileged sources is unconvincing.  As Defendant explains,

12  "Plaintiff was never advised that he could not discuss the investigation with his spouse, religious

13  advisor, therapist, or other protected source." (Mot. 3:23-25; Barcelona Decl. Ex. A.)  Further,

14  Plaintiff admits that he "understood" that he "could not discuss the existence of the investigation

15  *with any member of the DOJ* other than [his] chosen representative or anything related to the

16  investigation *with any of the complainants or witnesses in the matter. . . .*" (Barcelona Decl. ¶ 17,

17  ECF No. 13-2 (emphasis added).)  Therefore, Plaintiff's own understanding of the confidentiality

18  order indicates Plaintiff did not believe it covered privileged sources and was instead narrowly

19  tailored to cover those who could potentially compromise the integrity of the investigation.

20  Therefore, Defendants' motion for summary adjudication of Plaintiff's free speech claims is

21  GRANTED.

22    *2.  Freedom of Association*

23    Defendants argue: "the individual defendants' restriction on not allowing

24  [P]laintiff to utilize another witness in the investigation to serve as his representative was an

25  appropriate time, place[,] and manner restriction" on [P]laintiff's freedom of association rights.

26  (Mot. 5:28-6:2.)  "The integrity of an investigation is strengthened when witnesses are

27  interviewed separately and when the witnesses do not confer with each other prior to their

28  interviews."  (Id. 6:2-4.)  "Plaintiff was free to use any other representative . . . [t]herefore, his

1   freedom of association was not infringed upon, and if it was, it was subject to a reasonable time,

2   place[,] and manner restriction." (Id. 6:16-20.)

3           Plaintiff asserts that "the First Amendment's right to free speech and association

4   also protects the right to be represented 'by counsel of choice free from unreasonable government

5   interference with the attorney-client relationship." (Opp'n 15:23-27 (citing Brotherhood of R.R.

6   Trainmen v. Va. ex rel. Va. State Bar, 377 U.S. 1, 5-6 (1964)).) "By denying [Plaintiff] his

7   counsel of choice for his administrative interrogation and by ordering [Plaintiff] not to discuss the

8   investigation, [Defendants] violated [Plaintiff's] First Amendment right to free speech and

9   association." (Id. 16:8-10.)

10          Plaintiff argues as follows:

11          Even if Defendants could show that the DOJ has a substantial
            governmental interest in the integrity of its internal affairs
12          investigations and that this interest could be furthered by a time,
            place, and manner restriction on its subjects' First Amendment
13          rights, the exclusion of Clark is not a reasonable time, place, and
            manner restriction, nor is it narrowly tailored, "leav[ing] open
14          ample alternative channels for communication of the information."

15  (Id. 20: 6-11 (quoting Mothershed, 410 F.3d at 611-612).)

16          Plaintiff further contends: "[T]he . . . defendants could have, when they learned

17  Clark was a potential witness in the investigation, sought confirmation of whether Clark was

18  [Plaintiff's] choice of counsel in the investigation . . . canceled [Plaintiff's] interview, interviewed

19  [Plaintiff] first or given him the choice . . . of having a different representative . . . ." (Id. 21: 6-

20  12.) "[T]he State . . . may institute reasonable time, place, and manner restrictions on [a citizen's]

21  First Amendment right to consult with an attorney." Mothershed, 410 F.3d at 611.

22          Defendants' asserted governmental interest in limiting Plaintiff's right to

23  representation by his counsel of choice is to "strengthen the integrity of the investigation into

24  alleged police misconduct by [P]laintiff." (Reply 4:16-18.) This interest is significant. (See supra

25  Section IV.A.1.) Further the Defendants have convincingly argued that by restricting Plaintiff's

26  right to use Clark as his representative, Defendants have strengthened the integrity of the

27  investigation by decreasing the opportunity for Plaintiff's testimony to be tainted. Since Plaintiff

28  was merely precluded from using a singular representative the restriction was narrowly tailored.

8

1   Therefore, Defendants' motion for summary adjudication of Plaintiff's freedom of association

2   claims is GRANTED.

3                    B.   Plaintiff's Cause of Action Alleging Violation of Public Safety Officers
                          Procedural Bill of Rights [POBR]
4

5           Plaintiff argues that Defendants violated the protections afforded to him by the

6   POBR (Cal. Gov't Code §§ 3300 et seq.).  (FAC 13:24-14:15.)  Accordingly Plaintiff seeks

7   injunctive relief and actual damages.  Government Code section 3303(i) states, in relevant part:

8                    whenever an interrogation focuses on matters that are likely to
                     result in punitive action against any public safety officer, that
9                    officer, at his or her request, shall have the right to be represented
                     by a representative of his or her choice who may be present at all
10                   times during the interrogation. The representative shall not be a
                     person **subject to** the same investigation.
11

12  Cal. Gov't Code § 3303(i)(emphasis added).

13          The parties dispute the proper interpretation of the words "subject to" within the

14  context of the POBR. Plaintiff argues that witnesses are not "subject to" an investigation whereas

15  Defendants argue witnesses necessarily fall within that classification.

16          Defendants contend that "Plaintiff cannot establish a violation [of the POBR]

17  because the language of the POBR limits a peace officer's choice of a representative to someone

18  who is not subject to the same investigation."  (Mot. 8:8-10.)  "When an administrative

19  interrogation is likely to result in punitive action against a peace officer, the officer has a right to

20  a representative at the interrogation, but that representative cannot be another witness in the

21  investigation . . . ."  (Id. 8:21-23.)

22                   While [D]efendants are not aware of any case that defines what the
                     phrase "subject to the investigation" means, [D]efendants submit
23                   that it should be given its plain and ordinary meaning, i.e., open or
                     exposed to, or being dependent or conditioned upon something.
24                   Because Kasey Clark was a witness interviewed in the
                     investigation, he was "subject to the same investigation" and
25                   therefore not available to represent [P]laintiff. Moreover, case law
                     has provided several caveats . . . which indicate that a right to a
26                   representative is not without limits.

27  (Id. 9:1-8 (citations omitted).)

28          Further, Defendants argue: "Permitting a witness in an investigation to represent

the subject of the same investigation could compromise the integrity of the investigation, and the integrity of an investigation into peace officer misconduct is paramount." (Id. 10:1-3 (citing Pasadena Police Officers Ass'n, 51 Cal. 3d at 569).) Defendants contend that permitting such representation might allow "[P]laintiff to craft his responses to portray a consistent story" and that "knowing Mr. Clark's responses to the questions posed could taint [P]laintiff's responses with information he did not have first hand, but only learned from Clark." (Id. 10:13-17.)

Plaintiff counters that "there is no basis . . . to sanction such a broad restriction on a peace officer's rights by the exclusion of a private attorney who was not the only witness or in any other way a unique (or necessary) witness in the investigation." (Opp'n 23:19-21.) Plaintiff responds:

> [T]he DOJ's interpretation – that a subject cannot be represented by someone who is "involved in" or designated as a witness in the same investigation could result in a Department always being able to block a subject's choice of representative simply by designating him or her as a witness in the investigation.

(Id. 24:21-25.) Plaintiff further argues: "With such integral rights on the line, the DOJ should be held to a higher quantum of proof than the need to protect some vague and conclusory 'integrity of the investigation' . . . ." (Id. 25:16-18.) "There is nothing that compels the conclusion that the Legislature intended Section 3303(i) to prevent a private attorney from being excluded from representing a subject peace officer merely because the attorney was one of several witnesses to events underlying the investigation." (Id. 27:1-4.)

Plaintiff contends that "[t]he Ninth Circuit analyzed the plain meaning of [the phrase 'subject to' in the context of another statute] and noted that the meaning of 'subject to' includes, among other things, 'governed or affected by.'" (Id. 23:28-24:3 (quoting Nw. Forest Res. Council v. Glickman, 82 F.3d 825, 833 (9th Cir. 1996) (citing Black's Law Dictionary, 1594 (4th ed. 1968))).) Plaintiff also argues that "Clark, nor any private attorney, could not be governed by or affected by a public agency's internal investigation of a peace officer[; a] public agency has no authority over a private attorney." (Id. 24:6-8.)

California courts have yet to analyze the meaning of the phrase "subject to" in the

1    context of Cal. Gov't Code § 3303(i). "The fundamental rule [of statutory interpretation] is that a

2    court should ascertain the intent of the Legislature so as to effectuate the law's purpose, and in

3    determining intent the court first turns to the words used." People v. Overstreet, 42 Cal. 3d 891,

4    895 (1986) (en banc) (citing People v. Black, 32 Cal. 3d 1, 5 (1982)).  "When statutory language

5    is clear and unambiguous, there is no need for construction and courts should not indulge in it."

6    Id.  "[W]e do not construe statutes in isolation, but rather read every statute 'with reference to the

7    entire scheme of law of which it is part so that the whole may be harmonized and retain

8    effectiveness.'"  People v. Pieters, 52 Cal. 3d 894, 899 (1991) (*en banc*) (quoting Clean Air

9    Constituency v. Cal. State Air Res. Bd., 11 Cal. 3d 801, 814 (1974)).

10                In sum, Plaintiff and Defendants propose different interpretations of the phrase

11   "subject to."  Defendants argue that the court should interpret the phrase "subject to" to mean

12   "open, or exposed to, or being dependent or conditioned upon something."  (Mot. 9:1-8.)

13   Plaintiff counters that the court should interpret the phrase "subject to" to mean "governed or

14   affected by."  (Opp'n 23:28-24:3.)  Neither interpretation is more convincingly the "plain

15   meaning" of the phrase.  Therefore, this court is guided by California court precedent as to the

16   legislative policy underlying this provision of the POBR.  The parties point to a number of

17   relevant California court decisions discussing the policy and legislative intent underlying the

18   POBR.

19                In Pasadena Police Officers Association v. City of Pasadena, 51 Cal. 3d 564

20   (1990), the California Supreme Court engaged in a lengthy discussion of the legislative policy

21   behind the POBR.

22              To keep the peace and enforce the law, a police department needs
              the confidence and cooperation of the community it serves. Even if
23              not criminal in nature, acts of a police officer that tend to impair the
              public's trust in its police department can be harmful to the
24              department's efficiency and morale. Thus, when allegations of
              officer misconduct are raised, it is essential that the department
25              conduct a prompt, thorough, and fair investigation. Nothing can
              more swiftly destroy the community's confidence in its police force
26              than its perception that concerns raised about an officer's honesty
              or integrity will go unheeded or will lead only to a superficial
27              investigation.

28   Id. at 568.

11

"Although notions of fundamental fairness for police officers underlie the Act, a number of its provisions also reflect the Legislature's recognition of the necessity for internal affairs investigations to maintain the efficiency and integrity of the police force serving the community." Id. at 572.  The Court noted that "[s]ome of the rights that the [POBR] affords peace officers resemble those available in criminal investigation." Id. at 577.  However, the POBR makes accommodations which reduce those rights to less than the constitutional protections afforded to criminal defendants.  See id.

> [Such] accommodation[s] suggest[] . . . recognition by the Legislature that a law enforcement agency should retain greater latitude when it investigates suspected officer misconduct than would be constitutionally permissible in a criminal investigation. Limitations on the rights of those employed in law enforcement have long been considered "a necessary adjunct to the [employing] department's substantial interest in maintaining discipline, morale, and uniformity" . . . . That interest is increased when preservation of public confidence in the trustworthiness and integrity of its police force is at stake.

Id. at 577 (quoting Kannisto v. City and Cnty. of S.F., 541 F.2d 841, 843 (9th Cir. 1976)).

The Court in Pasadena was faced with the issue of "whether subdivision (f) of Government Code section 3303 manifests a legislative intent to grant preinterrogation discovery rights to a peace officer who is subject of an internal affairs investigation." Id. at 568-569.  In answering that question the court looked to subdivision (h), now subdivision (i), the subdivision at issue in this motion.  The court reasoned:

> Disclosure before interrogation might color the recollection of the person to be questioned or lead that person to conform his or her version of an event to that given by witnesses already questioned. Presumably, a related concern led the Legislature to limit an officer's choice of a representative during interrogation to someone who is not a subject of the same investigation.  That limitation seeks to ensure that participants in the same incident are not privy to evidence provided by other **witnesses** . . .  Furnishing [the officer under investigation] *before* his interrogation with the notes of [] [another witness's] interview would require the Department to disclose the same type of information that subdivision [(i)] seeks to shield from exposure.
>
> . . . During an interrogation, investigators might want to use some of the information they have amassed to aid in eliciting truthful statements from the person they are questioning.

1    Id. at 579 (emphasis added).

2           Following Pasadena, the California Fourth District Court of Appeal held that an

3    "officer's right to be represented by a person of his or her choice during an interrogation . . . is not

4    unlimited." Upland Police Officers Ass'n v. City of Upland, 111 Cal. App. 4th 1294, 1306

5    (2003). Further, in Ass'n for L.A. Deputy Sheriffs v. Cnty. of L.A., 166 Cal. App. 4th 1625,

6    1636 (2008), the Fourth District Court of Appeal stated that "[t]he Upland court essentially ruled

7    that a police officer's right to representation under section 3303, subdivision (i), did not include

8    . . . an absolute . . . right to [be] represented by **any** counsel of the officer's choosing." Id.

9    Further "a police officer's choice of counsel must *reasonably* accommodate his or her

10   department's interests in conducting a prompt and efficient investigation of an officer-involved

11   shooting incident." Id.; see also Quezada v. City of L.A., 222 Cal. App. 4th 993, 1006 (2014)

12   ("[A]n officer's right to be represented by the person of his or her choice is not unlimited.")

13          Pasadena and its progeny evince that the integrity of an officer investigation is best

14   served if the officer under investigation is not permitted to be represented by a fellow witness.

15   Therefore, this Court interprets the phrase "subject to" in POBR's subdivision (i) as including a

16   designated witness. Thus, the Department was within the scope of the POBR in precluding

17   Plaintiff from using Clark as his designated representative. Therefore, Defendants' motion for

18   summary judgment is GRANTED as to the POBR claim.

19                    C.  Plaintiff's Cause of Action under the California Constitution

20          Plaintiff further alleges in his FAC that Defendants violated his freedom of speech

21   and association rights protected by Article I, Section 2(a) of the California Constitution and

22   consequently seeks injunctive relief and actual damages. (FAC 14:16-28.)

23          Defendants contend, "Plaintiff sues the [DOJ] and the individual defendants in

24   their representative capacities for money damages for violation of the right to free speech and/or

25   association created by Article 2a of the California Constitution. But there is no such private right

26   of action." (Mot. 11: 4-7.)

27          Further, Defendants argue that Plaintiff is not entitled to injunctive relief; "[e]ven

28

                                                13

1   though the California Supreme Court has determined that the right to free speech and association

2   found in the California Constitution offer greater protections than the First Amendment to the

3   United States Constitution, [P]laintiff still cannot establish that he suffered any loss of speech or

4   association."  (Id. 12:10-13 (internal citation omitted).)

5            Plaintiff counters that "California case law has not precluded the granting of

6   damages for violations of Section 2 of the California Constitution." (Opp'n 31:23-24.)

7            Defendants reply that "even if [Plaintiff] establishes the propriety of a

8   constitutional tort, both the DOJ and its officials, the individual defendants, have immunity from

9   such liability. California Government Code section 815 provides for immunity for the DOJ, and

10  section 820.2 provides immunity for discretionary decisions by the individual defendants." (Reply

11  9:16-20.)

12           This court need not decide whether the establishment of a constitutional tort under

13  the California constitution allows the Court to grant damages. Plaintiff is unable to establish that

14  Defendant violated his right to freedom of speech or association. While Defendant prevented

15  Plaintiff from using Clark as his representative, and issued a confidentiality instruction, these

16  limitations are reasonable time, place, and manner restrictions under the California Constitution.

17  Courts apply an identical test in determining whether a restriction is a permissible time, place, and

18  manner restriction under the California Constitution as they do under the United States

19  Constitution.  See Slevin v. Home Depot, 120 F.Supp.2d 822, 836 (N.D. Cal. 2000) ("In order to

20  survive California constitutional scrutiny, such restrictions must be (1) narrowly tailored, (2)

21  serve a significant interest, and (3) leave ample alternative avenues of communication.").

22  "Although California applies broader protection of speech in certain respects, it appears that

23  California assesses the validity of time, place[,] and manner restrictions under the familiar federal

24  constitutional standards." L.A. Alliance for Survival v. City of L.A., 987 F. Supp. 819, 829 (C.D.

25  Cal. 1997)

26           As argued above, the California Supreme Court in Pasadena emphasized the

27  significance of the government's interest in "maintaining the efficiency and integrity of its police

28  force, which, in enforcing the law, is entrusted with the protection of the community it serves."

1   Pasadena Police Officers Ass'n, 51 Cal. 3d at 569; see also Upland Police Officers Ass'n., 111

2   Cal. App. 4th at 1308 ("[A] law enforcement agency should retain greater latitude when it

3   investigates suspected officer misconduct than would be constitutionally permissible in a criminal

4   investigation. Limitations on the rights of those employed in law enforcement have long been

5   considered 'a necessary adjunct to the [employing] department's substantial interest in

6   maintaining discipline, morale and uniformity.'")  Further, for the reasons argued above the

7   restrictions are narrowly tailored and leave open alternative avenues of communication;

8   Defendants permitted Plaintiff to utilize any non-witness representative and Defendants only

9   prohibited Plaintiff from discussing the investigation with those who could potentially taint the

10   investigation. See discussion supra Section IV.A.   Therefore, Defendants' motion for summary

11   adjudication of Plaintiff's California Constitutional claims is GRANTED.

12                     D.  Plaintiff's Request for Declaratory Relief and Attorney's Fees

13                     Plaintiff seeks

14
          a judicial determination that, under Government Code section
15        3303(i), Clark was not "subject to the same investigation" as
          [Plaintiff] and that [Plaintiff] was lawfully entitled to have Clark
16        represent him at his administrative interrogation and that the DOJ
          cannot, in the future, exclude as a representative any attorney (even
17        attorneys over which the DOJ has no authority), by designating that
          attorney as a witness to the investigation[.]

18   (FAC 15:2-7.)  Because the Court disagrees with Plaintiff's interpretation of Government Code

19   section 3303(i) (see discussion supra Section IV.B.), Plaintiff is not entitled to the requested

20   declaratory relief.

21                     Plaintiff also requests "attorney's fees pursuant to 42 U.S.C. § 1988." (FAC

22   15:13-16.)  42 U.S.C. § 1988(b) prescribes in relevant part: "In any action or proceeding to

23   enforce a provision of section[] . . . 1983 . . . of this title, the court, in its discretion, may allow the

24   **prevailing** party . . . a reasonable attorney's fee as part of the costs . . . ."  Here Plaintiff is not a

25   prevailing party as to his 42 U.S.C. § 1983 claims and is thus not entitled to attorney's fees.

26        V.      CONCLUSION

27                     Defendants' motion for summary judgment of Plaintiff's claims is GRANTED.

28

1    Plaintiff's cross-motion is DENIED. The Clerk of Court shall enter judgment in favor of the

2    Defendants.

3

4    Dated: February 16, 2016

5

6

7    _____
     Troy L. Nunley

8    United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28